*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 12, 2024

*In re* DANNER, Minors.

Nos. 369295; 369296
Calhoun Circuit Court
Family Division
LC No. 2022-000740-NA

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal as of right the trial court's order terminating their parental rights to their two minor children, ED and GD, under MCL 712A.19b(3)(a)(*ii*) (child deserted for 91 days or more); MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (other conditions exist); and MCL 712A.19b(3)(j) (reasonable likelihood of harm). We affirm.

## I. BACKGROUND

In March 2022, the Department of Health and Human Services petitioned the trial court for an ex parte order removing ED and GD from the care and custody of their parents. Following a preliminary hearing, the trial court authorized the petition, placed the children with petitioner for care and supervision, and ordered supervised parenting time. Respondents were adjudicated by plea in May 2022. Relative to the instant appeal, respondent-father admitted allegations that he told the Children's Protective Services (CPS) worker who came to their residence on March 24, 2022, that he had relapsed several times since June 2020 and had used heroin in November 2021. Respondent-mother pleaded no contest to allegations that, on March 24, 2022, she appeared to be under the influence of substances, that she admitted using drugs in the home with the children present, that she and respondent-father usually took turns using drugs, and that neither respondent

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] *In re Danner Minors*, unpublished order of the Court of Appeals, entered January 17, 2024, (Docket Nos. 369295 and 369296).

was honest with the other about when or what substances they were using. She also pleaded no contest to the allegation that she was told on March 24 that she had four active warrants, including a felony warrant for methamphetamine, and that she would be arrested and lodged at the county jail. The trial court assumed jurisdiction over the children, ordered the parents to comply with the recommendations in the Parent Agency Treatment Plans, and gave petitioner the discretion to allow unsupervised parenting time.

After a slow start, respondents made considerable progress following their attendance at a three-week in-patient drug rehabilitation program in January 2023. At the May 2023 review hearing, the foster-care worker reported that respondents had been clean and sober since October 2022. Respondents participated in weekly drug screens, marriage counseling through their church, substance-abuse counseling, and random drug screens at Victory Clinic. They had appropriate housing. Respondent-father was receiving Social Security Disability benefits. Respondent-mother was set to start a job. Respondents had had two weeks of successful, unsupervised parenting time at their home, and they were scheduled to have overnight parenting time Memorial Day weekend. The foster-care worker recommended a short review period (30 to 45 days) followed by the possible return of the children to respondents' care. The attorneys for respondents and the children's lawyer-guardian ad litem agreed with the recommendation.

However, a significant turning point in the case occurred on June 15, 2023. The respondents were scheduled to begin a long weekend of overnight parenting time. The foster-care worker took the children to respondents' home at 10:00 a.m., but no one was home. When she telephoned respondents, they told her that they were at the courthouse for respondent-mother's pretrial hearing in another matter and that respondent-father would come pick up the children. Respondent-father went home, picked up the children, and returned to the courthouse. An hour later, the foster-care worker received a telephone call from a bond agent who told her that respondent-mother had been drug tested after her pretrial hearing and the result was positive for benzodiazepine. Respondent-mother did not have a prescription for benzodiazepine.

Although respondent-mother was told to wait, she left the courthouse with respondent-father and the children. As respondent-father was backing his car out of a parking space, he backed into another vehicle. At the time of the collision, the children were in respondent-father's car and respondent-mother was purportedly hiding in the backseat. Rather than stop, respondent-father left the scene and drove home. After dropping off respondent-mother and the children, respondent-father walked back to the courthouse and turned himself in. He was screened for drugs and tested positive for benzodiazepine. His bond for a 2021 crime was revoked, and he remained in jail until he was sentenced in June 2023 to one year in jail. A bench warrant was issued for respondent-mother's arrest. The probation department later informed the foster-care worker that respondent-mother had also tested positive for benzodiazepine on June 1, 2023. Respondent-mother avoided arrest for more than four months until she was ultimately arrested in November 2023.

At the July 2023 permanency planning hearing, the foster-care worker recommended changing the goal from reunification to adoption and sought leave to file a supplemental petition for termination. The foster-care worker reported that the children had been in foster care for nearly 15 months, and petitioner had given respondents time to remove the barriers to reunification. But every time reunification appeared attainable, the situation regressed. The foster-care worker opined that there was not a reasonable expectation that the barriers to reunification would be

removed within a reasonable time. The trial court authorized the goal change, ordered petitioner to file a supplemental petition for termination, and ordered supervised parenting time for both respondents until further order of the court. Petitioner filed a supplemental petition seeking termination under MCL 712A.19b(3)(c)(*i*) and (j).

At the termination hearing, the foster-care worker testified regarding respondents' lack of progress and explained that the barriers to reunification that existed at adjudication still existed at the time of the termination hearing. The trial court found clear and convincing evidence established the grounds for termination under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), and (j), and that termination of respondents' parental rights was in the children's best interests. These appeals followed.

## II. RESPONDENT-MOTHER'S APPEAL

## A. REASONABLE EFFORTS

Respondent-mother argues that, because the foster-care worker sua sponte stopped providing services after June 15, 2023, the trial court erred by determining that petitioner made reasonable efforts toward reunification and thus the statutory grounds for termination were not met.[2] We disagree.

We generally review for clear error a trial court's decision regarding reasonable reunification efforts. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Baham*, 331 Mich App 737, 751; 954 NW2d 529 (2020) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

A respondent must object to the services at the time they are offered to preserve an argument about reasonable efforts for family reunification. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent-mother acknowledges that she "did not expressly object to no efforts made since the June 2023 incident[.]" Because respondent-mother did not raise any issue concerning reasonable efforts until her cross-examination of the foster-care worker at the termination hearing, this unpreserved issue is reviewed for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021); see *In re Atchley*, 341 Mich App at 336-337. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App at 258 (cleaned up). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (cleaned up).

---

[2] Respondent-mother does not challenge the reasonableness of petitioner's efforts before June 15, 2023.

-3-

"Under Michigan's Probate Code, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). The failure to make reasonable efforts to avoid the termination of parental rights may prevent the establishment of statutory grounds for termination. *In re Newman*, 189 Mich App 61, 67-68; 472 NW2d 38 (1991).

Respondent-mother argues that petitioner failed to fulfill its statutory duty when the foster-care worker did not get a commitment from respondent-mother to restart services during an October 2023 encounter. We disagree. The foster-care worker testified at the termination hearing that she saw respondents at a bus stop near her office in October 2023 and stopped to talk to them. The foster-care worker asked respondents about services and why she was unable to get information about respondents' drug screens from Victory Clinic. Respondent-mother told her that she was going to get back on track, that she wanted to see her children, and that she would call the foster-care worker as soon as her phone was turned back on in a couple days. Respondent-mother has not established that petitioner's duty to provide reasonable efforts toward reunification obligated petitioner to obtain an additional commitment from respondent-mother beyond her assurances given to the foster-care worker.

Next, respondent-mother accurately asserts that, when she was incarcerated, the foster-care worker suggested a class to respondent-mother that was going to be discontinued and another class that may not be offered during her incarceration. Under the circumstances, however, this does not provide a basis for concluding that the trial court's reasonable-efforts determination was clearly erroneous. The foster-care worker testified that she told respondents about all the classes that were available to them in the jail. Respondent-mother testified that she signed up for everything available to her. Apart from parenting time, respondent-mother has not identified any additional services that were within petitioner's power to provide, nor has she shown that she was prejudiced by the lack of services. Further, the record reflects that respondent-mother's inability to engage in services while incarcerated did not weigh in the trial court's termination decision.

Respondent-mother also argues that petitioner failed to fulfill its statutory duty when the foster-care worker stopped providing services on her own initiative, in violation of the governing court order. Presumably, respondent-mother's assertion pertains to the foster-care worker's decision not to arrange for in-person or video parenting time while respondents were incarcerated, but to conduct parenting time by having respondents write to the children instead. This decision violated the trial court's order regarding parenting time, and the trial court made clear that such violation was unacceptable and could result in a foster-care worker being held in contempt of court. Nevertheless, the trial court found that this violation was not enough to find that petitioner had not made reasonable efforts at reunification.

Viewing the record as a whole, the trial court's determination that petitioner made reasonable efforts at reunification was not clearly erroneous and thus respondent-mother has failed to establish any plain error. Petitioner provided respondent-mother with parenting classes, supportive visitation, drug screens, psychological evaluations, and parenting time, among other things. The foster-care worker attempted to offer services to respondent-mother from June 15, 2023 through November 8, 2023, but respondent-mother failed to communicate with the foster-care worker. "While the petitioner has a responsibility to expend reasonable efforts to provide

services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered. This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App at 339 (cleaned up). Even if petitioner's efforts at reunification during the last few months of the case were inadequate with respect to parenting time, respondent-mother has not demonstrated that petitioner did not make reasonable efforts to reunify the family and thus she has not established plain error.

## B. STATUTORY GROUNDS

The trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), and (j). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

Respondent-mother does not challenge the trial court's findings that MCL 712A.19b(3)(c)(*i*) and (j) supported termination. Accordingly, she has abandoned any error relative to termination under MCL 712A.19b(3)(c)(*i*) and (j). See *Riemer v Johnson*, 311 Mich App 632, 653; 876 NW2d 279 (2015). Because respondent-mother does not challenge that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*) and (j),[3] we need not address whether the trial court properly found statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*) and (c)(*ii*). See *In re Foster*, 285 Mich App at 633.

## C. DUE PROCESS

Respondent-mother argues that petitioner did not list §§ 19b(3)(a)(*ii*) or 19b(3)(c)(*ii*) in the supplemental petition and thus violated her right to due process by not notifying her of, and giving her the opportunity to prepare to address, these statutory grounds at the termination hearing. Whether child protective proceedings comply with a parent's right to due process presents a question of constitutional law that this Court reviews de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). Respondent-mother did not raise her due-process claim in the proceedings below and thus the issue is not preserved. We review unpreserved challenges for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App at 258.

Petitioner concedes that the supplemental petition did not seek termination under MCL 712A.19b(3)(a)(*ii*) or (c)(*ii*). But any error in terminating respondent-mother's parental rights under MCL 712A.19b(3)(a)(*ii*) or (c)(*ii*) is harmless because respondent-mother does not challenge that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*) and (j) and the "court needed clear and convincing evidence of only one statutory ground to support

---

[3] Nevertheless, from our review of the record, we conclude that the trial court's determination that clear and convincing evidence supported termination under MCL 712A.19b(3)(c)(*i*) and (j) was not clearly erroneous.

its termination order." See *In re Powers Minors*, 244 Mich App 111, 118-119; 624 NW2d 472 (2000). Accordingly, respondent-mother has not established plain error affecting her substantial rights.

## D. BEST INTERESTS

Respondent-mother also contends that it was not in the best interests of the children to terminate her parental rights. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App at 346. "If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5).

The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 249. Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider a parent's substance-abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001).

The foster-care worker testified that it was in the children's best interests to establish permanency and finality. At the time of the termination hearing, the children were five years old and had been in foster care for 19 months. The children were in a preadoptive home and were bonded to the foster parents and to their foster siblings, who were similar in age. The children were involved in social activities, such as karate, daycare, and their church group, and their health needs were being met. The children experienced developmental delays when they entered care, but the services provided by daycare facilities, surgeries, and speech therapy resulted in significant improvements. When the termination hearing began, respondent-father had eight or nine months left on his jail sentence, and respondent-mother was incarcerated and awaiting sentencing. The children were poised to begin school, and it seemed unlikely that respondents would be able to create a safe, stable, permanent environment for the children within a reasonable time. The trial court determined that the length of time that the children had been in foster care, their bond with the foster parents, the substantial progress that the children had made while in the foster parents' care, and the children's need for stability weighed in favor of termination. We conclude that a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights to ED and GD was in the children's best interests, and we are not left with a definite and firm conviction that the trial court made a mistake.

## III. RESPONDENT-FATHER'S APPEAL

Respondent-father challenges the trial court's determination that clear and convincing evidence established statutory grounds for termination and that termination was in the children's best interests.

The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*) (c)(*ii*), and (j). Parental rights may be terminated under MCL 712A.19b(3)(c)(*i*) if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] ha[s] not accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), "despite time to make changes and the opportunity to take advantage of a variety of services[,]" *White*, 303 Mich App at 710 (cleaned up). Determining whether a respondent is likely to rectify the conditions leading to adjudication within a reasonable time requires consideration of both how long the parent will take to improve the conditions and how long the children can wait for the improvements. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991).

It is undisputed that, at the time of termination, more than 182 days had elapsed since the initial disposition order was entered. The trial court found that respondent-father's substance abuse continued to be an issue. Respondent-father's inability to establish that he had a prescription for benzodiazepine on June 15, 2023 was central to the trial court's decision. Respondent-father represented several times through the proceedings that he had a prescription for Ativan/Lorazepam. As early as the children's removal in March 2022, respondent-father implied that he had such a prescription when he told the CPS worker who petitioned to remove the children in March 2022 that he believed that respondent-mother took some of his Ativan. In May 2023, he sent three images of a prescription bottle of Lorazepam to the foster-care worker. At the request of respondent-father's attorney, the foster-care worker sent the prescription bottle images to the attorney in July 2023. Also in July, respondent-father gave the foster-care worker the name of the physician through whom he claimed to receive his medications. Despite this, the foster-care worker was unable to verify that respondent-father had a valid prescription. Even after the hearing resumed following a two-month adjournment, respondent-father was unable to establish that he had a prescription for benzodiazepine that was valid on June 15. There was no documentary evidence of respondent-father's valid prescription, and respondent-father did not attend the termination hearing, so there was no testimony from him. Under these circumstances, we are not left with a definite and firm conviction that the trial court clearly erred by finding that respondent-father's substance abuse continued to be an issue.

In June 2023, respondent-father was sentenced to one year in jail. At the time of the termination hearing, he had approximately six months remaining on his sentence. Because respondent-father elected not to attend and testify at the termination hearing, the trial court had no information about respondent-father's plans after his release regarding income, housing, or other arrangements to prepare for the children. The trial court indicated that the children had already been in care an unreasonable amount of time, and how much time respondent-father would need after his release from jail before the children could safely be reunited with him was speculative at

best. Under these circumstances, the trial court did not clearly err by determining that MCL 712A.19b(3)(c)(*i*) supported the termination of respondent-father's parental rights to ED and GD.

Because clear and convincing evidence supported termination under MCL 712A.19b(c)(*i*), we need not address whether the trial court properly found statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*), (c)(*ii*), and (j). See *In re Foster*, 285 Mich App at 633.[4]

Finally, termination of respondent-father's parental rights was in the children's best interests for the reasons stated earlier with respect to respondent-mother.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro

---

[4] We note that this Court has held that "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody. Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re Smith*, 324 Mich App 28, 49; 919 NW2d 427 (2018) (cleaned up).